```
                    UNITED STATES DISTRICT COURT

                    EASTERN DISTRICT OF LOUISIANA


DMG HOLDINGS, LLC                         CIVIL ACTION

VERSUS                                    NO: 11-1572

AMERICAN WORLD PICTURES, INC.             SECTION: R(2)
```

### ORDER AND REASONS

Defendant American World Pictures moves the Court to dismiss under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, or to dismiss the action under Rule 12(b)(3), or to transfer the action under 28 U.S.C. § 1404(a) or under the doctrine of *forum non conveniens*.[1] Because DMG has not demonstrated that AWP has sufficient minimum contacts with the forum state, the Court GRANTS the motion to dismiss under Rule 12(b)(2), and the Court therefore does not reach the other motions.

**I.   BACKGROUND**

This diversity action arises out of a film distribution contract executed in October 2009 between plaintiff DMG Holdings, LLC ("DMG") and defendant American World Pictures, Inc. ("AWP").[2] DMG is a Louisiana limited liability company with its principal

---

[1]   R. Doc. 7.

[2]   R. Doc. 1 at 2.

place of business in Metairie, Louisiana.  DMG describes its business as "creating, producing, distributing, and marketing motion pictures intended for commercial exhibition."[3]  AWP is a California corporation with its principal place of business in Encino, California.[4]  It engages in international film distribution, focusing on international sales conventions and festivals.[5]

On October 2, 2009, AWP sent DMG an e-mail inquiring about the status of distribution for the DMG film "Flesh Wounds."[6]  DMG replied the same day and asked to speak to the AWP representative on the telephone.[7]  DMG and AWP then exchanged a series of e-mails on October 7, 2011 about "Flesh Wounds" and "Bed and Breakfast," another DMG production.[8]  These negotiations took place exclusively over the telephone and via e-mail.[9]  AWP does not have any offices in Louisiana, nor do any of its employees

---

[3]   *Id.*

[4]   R. Doc. 7-1 at 1.

[5]   *Id.* at 3.

[6]   R. Doc. 15, Def.'s Ex. A.

[7]   *Id.*

[8]   *Id.*, Def.'s Ex. C.

[9]   R. Doc. 7, Def.'s Ex. A at 3 ("Declaration of Mark L. Lester").

2

reside in Louisiana.[10]  Further, at no point did AWP send any representatives to Louisiana.[11]

On October 13, 2009, the two parties executed three distribution contracts, one each for "Flesh Wounds" and "Bed and Breakfast" and one for "Journey to Promethea."[12]  The agreements specify that AWP was to become DMG's Worldwide Sales Agent for a territory defined as "Worldwide (excluding the US and Canada)."[13]  The agreements provide that AWP will pay DMG a $25,000 advance for each film, and that AWP will advance an "unallocated flat marketing expense fee" capped at $60,000 for purposes of advertising, publicity, and promotion.[14]  The agreements allocate twenty percent of gross sales to AWP for its sales agent fee.  DMG is entitled to the remainder of the gross sales, but only after the advances have been recouped.[15]  AWP also agrees to render periodic accounting reports and payments to DMG.  Further, the agreements state that DMG has the right to audit every twelve months, but that the records are stored in Los Angeles and audits

---

[10]   *Id.* at 2.

[11]   *Id.* at 3.

[12]   R. Doc. 8, Pla.'s Ex. 1-3.

[13]   *Id.* at 1.

[14]   *Id.*

[15]   *Id.*

are to take place at the AWP offices in California. The agreements do not contain a forum selection clause.

DMG filed suit on July 25, 2011, alleging that AWP breached the contract by charging DMG for the full market fee of $60,000 for each film without accounting for actual expenditures and by charging DMG for delivery elements.[16] DMG also asserts that AWP failed to render an accounting to DMG in violation of the agreement. AWP now moves to dismiss the suit, or in the alternative, to transfer venue to the Central District of California.[17]

## II.   PERSONAL JURISDICTION

### A.   Legal Standard

When a nonresident defendant moves the court to dismiss for lack of personal jurisdiction, the plaintiff bears the burden to show that personal jurisdiction exists. *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). The allegations of the complaint, except as controverted by opposing affidavits, must be taken as true, and all conflicts in the facts must be resolved in favor of plaintiffs. *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985). In making its determination, the Court may consider "affidavits, interrogatories, depositions,

---

[16]   R. Doc. 1 at 3.

[17]   R. Doc. 7.

4

oral testimony, or any combination of . . . recognized [discovery] methods." *Id.*

A court has personal jurisdiction over a nonresident defendant if (1) the forum state's long-arm statute confers personal jurisdiction over that defendant, and (2) the forum state's exercise of jurisdiction complies with the Due Process Clause of the Fourteenth Amendment. *Latshaw v. Johnson*, 167 F.3d 208, 211 (5th Cir. 1999). Because Louisiana's long-arm statute, La. Rev. Stat. § 13:3201, *et seq.*, extends jurisdiction to the full limits of due process, the Court's focus is solely on whether the exercise of its jurisdiction in this case satisfies federal due process requirements. *Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 336 (5th Cir. 1999)(citing La. Rev. Stat. § 13:3201(B)).

The exercise of personal jurisdiction over a nonresident defendant satisfies due process when (1) the defendant has purposefully availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with that state, and (2) exercising personal jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice." *Latshaw*, 167 F.3d at 211 (citing *Int'l Shoe Co. v. Wa.*, 326 U.S. 310, 316 (1945)).

There are two ways to establish minimum contacts: specific jurisdiction and general jurisdiction. *Wilson v. Belin*, 20 F.3d

644, 647 (5th Cir. 1994). General jurisdiction will attach, even if the act or transaction sued upon is unrelated to the defendant's contacts with the forum state, if the defendant has engaged in "systematic and continuous" activities in the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.9 (1984); *Wilson*, 20 F.3d at 647. Contacts between a defendant and the forum state must be "extensive" to satisfy the "systematic and continuous" test. *Submersible Sys., Inc. v. Perforadora Cent., S.A. de C.V.*, 249 F.3d 413, 419 (5th Cir. 2001). *See also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2853-54 (2011)("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation it is an equivalent place, one in which the corporation is fairly regarded as at home.").

Specific jurisdiction exists when a nonresident defendant "has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or related to those activities." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 867 (5th Cir. 2001); *Helicopteros*, 466 U.S. at 414 n.8. The minimum contacts showing may be established by actions, or even just a single act, by the nonresident defendant who "purposefully avails itself of the privilege of conducting activities within the forum state, thus

invoking the benefits and protections of its laws." *Burger King Corp. V. Rudzewicz*, 471 U.S. 462, 475 (1985). Purposeful availment "must be such that the defendant 'should reasonably anticipate being haled into court' in the forum state." *Ruston Gas Turbines Inc. v. Donaldson Co.*, 9 F.3d 415, 418 (5th Cir. 1993)(citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). The issue here is whether the Court has specific jurisdiction over AWP because DMG does not contend general jurisdiction exists.

**B.   Discussion**

When a nonresident defendant, such as AWP, moves to dismiss for lack of personal jurisdiction, the burden is on the plaintiff to show that personal jurisdiction exists. DMG contends that AWP has sufficient contacts with Louisiana to establish personal jurisdiction based on AWP's pre-agreement conduct and AWP's continuing obligations under the agreement. DMG asserts that it received solicitations from AWP via e-mail and via telephone before executing the agreement.[18] DMG also contends that AWP's contacts are based on not one, but three separate contracts signed by DMG in Louisiana.[19] Further, DMG relies on the fact that it will receive payments in Louisiana for the marketing of

---

[18]   R. Doc. 8 at 1.

[19]   *Id.* at 4-5.

the film and periodic accounting reports.  DMG also argues that its cause of action arises out of AWP's contacts with Louisiana.

AWP contends that it lacks sufficient minimum contacts with the State of Louisiana.  When AWP initiated discussions with DMG, it remained unaware of the state of DMG's residence.[20]  Moreover, the primary location of performance, AWP contends, is either California, where it is located, or outside the United States, as the contracts stipulate.[21]  Although AWP concedes that DMG signed the contracts in Louisiana, it argues that the contracts specify that the effective date is "the date of completed delivery," which occurred in Los Angeles.[22]  AWP acknowledges that it owes accounting to DMG, but argues that accounting is incidental to DMG being located in the state.[23]  Finally, AWP asserts that it never entered Louisiana in connection with the DMG agreement.[24]

The Court does not find DMG's arguments in favor of jurisdiction to be persuasive.  In determining whether personal jurisdiction exists, "prior negotiations and contemplated future consequences" as well as the parties' course of dealing must be evaluated.  *Dickson Marine*, 179 F.3d at 337.  It is well-

---

[20]   R. Doc. 15 at 4.

[21]   *Id.* at 5.

[22]   R. Doc. 15 at 5.

[23]   R. Doc. 7-1 at 8.

[24]   *Id.* at 4.

established in the Fifth Circuit that entering into a contract with a resident of the forum state does not by itself establish minimum contacts.  *See Latshaw*, 167 F.3d at 211 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478-79 (1985)).  AWP and DMG engaged with each other exclusively by telephone and e-mail for eleven days leading up to executing the agreements.  The Fifth Circuit has made clear, however, that without more, actions of this kind do not constitute sufficient minimum contacts to subject the nonresident defendant to the forum state's courts.  *Freudensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327, 344 (5th Cir. 2004)(citing *Holt Oil & Gas Corp. V. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986)).  In *Freudensprung*, for example, Offshore Technical Services, Inc. ("OTI"), a Texas corporation, entered into a contract with Willbros West Africa, Inc. ("WWAI"), a Panamanian corporation, to supply WWAI with personnel for the performance of WWAI's contracts in Africa.  *Id.* at 332.  Freudensprung, an OTI employee, initiated proceedings in Texas against WWAI under the Jones Act.  *Id.* at 333.  Freudensprung argued that the court had specific jurisdiction over WWAI because WWAI had purposefully availed itself of the benefits of the state of Texas by (1) entering into a contract with OTI, a Texas-based corporation; (2) contemplating arbitration in Texas; (3) initiating a long-term business relationship with OTI; (4) communicating with OTI pursuant to the contract; and (5) sending

9

payments to OTI in Texas.  *Id.* at 344.  The Fifth Circuit held that, even assuming the personal injury claim could be deemed to arise out of the personnel agreement between OTI and WWAI, WWAI's cited activities, without more, failed to establish "the minimum contacts necessary to comport with constitutional due process." *Id.*  Indeed, the Fifth Circuit noted that it has repeatedly held that "the combination of mailing payments to the forum state, engaging in communications related to the execution and performance of the contract, and the existence of a contract between the nonresident defendant and a resident of the forum are insufficient to establish the minimum contacts necessary to support personal jurisdiction over the nonresident defendant." *Id.* (citing cases).  *See also Renoir v. Hantman's Assocs.*, 230 Fed. Appx. 357, 360 (5th Cir. 2007)(citing *Holt*, 801 F.2d at 778)("An exchange of communications in the course of developing and carrying out a contract . . . does not, by itself, constitute the required purposeful availment of the benefits and protections of [the forum state].").

Moreover, DMG's failure to demonstrate that material performance will occur in Louisiana weighs against exercising personal jurisdiction over the defendant.  *See Freudensprung*, 379 F.3d at 345 (any significance of contacts diminished when "material portions of the contract . . . were to be performed in West Africa, not Texas); *Holt*, 801 F.2d at 778 (when material

10

performance occurred outside the forum state, fact that defendant mailed payments to forum state did not weigh heavily in court's determination). Here, DMG and AWP contracted for AWP to distribute DMG's films internationally in a territory that specifically excluded the United States. Thus, the material performance can only occur in California, where AWP is located, or internationally. *See McFaddin v. Gerber*, 587 F.3d 753, 760 (5th Cir. 2009). The Court finds *McFaddin* instructive on this point. In *McFaddin*, the Texas plaintiffs entered into a ten-year sales contract with the Colorado defendants. *Id.* The court found that "[t]he entire purpose of the agreement was to open up markets outside of Texas." *Id.* The contract was formed in Colorado. *Id.* After formation, "performance of the contract occurred in Colorado and the Rocky Mountain region[, and] . . . Denver was the hub of activities." *Id.* at 761. As in *McFaddin*, the entire purpose of DMG's agreement was to distribute the films outside of Louisiana. The terms of the contract indicate that it was formed when AWP executed it in California. In addition, the bulk of the performance occurred in California or abroad. Any contact that AWP directed to DMG in Louisiana "came from the fortuity" of DMG's residence there. *McFaddin*, 587 F.3d at 761; *see also Holt*, 801 F.2d at 778 (communications to Texas resident rested on nothing but "the mere fortuity that [plaintiff] happens to be a resident of the forum").

11

Furthermore, the Court finds DMG's argument that the cause of action arose out of AWP's contact with Louisiana unpersuasive. "When the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment." *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999). In these cases, "the content of the communications has a direct connection to the causes of action asserted." *Orix Pub. Fin., LLC v. Lake County Housing and Redevelopment Auth.*, No. 3:11-CV-0678-D, 2011 WL 3628958, at *6 (N.D. Tex. Aug. 16, 2011)(citing *Barney F. Kogen & Co. v. Tred Avon Assocs. Ltd.*, 393 F. Supp. 2d 519, 523-24 (S.D. Tex. 2005)). Here, DMG's claims[25] lie in AWP's performance under the contract - not the communications that led up to the agreement itself. Because these communications did not give rise to DMG's cause of action, *see Wien*, 195 F.3d at 213, DMG's argument that the contacts constitute purposeful availment fails.

Accordingly, the Court finds that AWP lacks sufficient minimum contacts to support specific jurisdiction.

---

[25]   R. Doc. 1 at 4-5.

**III. CONCLUSION**

For the foregoing reasons, the Court GRANTS defendant's motion to dismiss for lack of personal jurisdiction without prejudice.

New Orleans, Louisiana, this 14th day of October, 2011.

*Sarah Vance*

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE